UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATONYA DILLON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OFFICER NGUYEN, et al.,<br><br>　　　　Defendants. | Case No. 24-cv-04735-JST<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 23 |

Before the Court is a motion to dismiss the first amended complaint ("FAC") by Defendants Officer Nguyen, Officer Caballero, Officer Hiller, Officer Leichliter, Officer Rodriguez, Officer Rossi, Officer Vukasinovic, Sergeant Perez-Angeles, Sergeant Fowler, and Sergeant Rowbotham, all of the Oakland Police Department (collectively, "Defendants"). ECF No. 23. For the reasons set forth below, the Court will deny the motion.

## I.　BACKGROUND[1]

Plaintiff Latonya Dillon brings this civil rights action against Defendants under 42 U.S.C. § 1983, alleging claims for fabrication of evidence and malicious prosecution. ECF No. 20. Dillon claims she was wrongfully arrested and prosecuted for multiple charges stemming from the criminal conduct of her brother, Rahsaan Robinson.[2] *Id.* ¶ 19.

On November 14, 2020, Dillon left her daughter in her mother's care at her mother's home in Oakland before heading to a dental appointment. *Id.* ¶ 20. Dillon received a call from her mother, who told her that Robinson had arrived in a white Mercedes and openly brandished a gun.

---

[1] For the purposes of deciding this motion, the Court accepts as true the following factual allegations from the FAC, ECF No. 20. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).
[2] Robinson was arrested and prosecuted separately; he is serving a five-year prison sentence for the crimes he committed on November 14, 2020. ECF No. 20 ¶ 19 n.2.

*Id.* ¶ 21. Concerned for her daughter's safety, Dillon left her dentist's office to pick up her daughter from her mother's home. *Id.* ¶ 23. On her way there, she called 911 to provide Robinson's name and description, report that he had a gun, and convey that she was headed to the scene to pick up her daughter. *Id.* ¶ 24.

Defendants Nguyen, Caballero, Hiller, Perez-Angeles, and Fowler were the first officers to arrive to the scene. *Id.* ¶ 27. After the officers arrived, Robinson fled on foot, leaving his car's hazard lights flashing and doors open. *Id.* ¶¶ 29–30. Dillon arrived after Robinson fled. *Id.* ¶ 30. At her mother's request, Dillon attempted to move the stranded white Mercedes out of the street. *Id.* ¶¶ 31–32. While she was making this effort, Dillon was approached by Nguyen, Caballero, and Hiller, who questioned and detained her. *Id.* ¶¶ 31–33. Nguyen, Caballero, Hiller, Perez-Angeles, and Leichliter searched the white Mercedes and "found a black handgun, an assault rifle, and a gray duffle bag containing marijuana." *Id.* ¶ 34. The officers also searched Dillon's bag and found a pink handgun legally owned and registered in her name. *Id.* Leichliter, Rodriguez, and Rossi placed Dillon under arrest. *Id.* ¶ 34.

Dillon claims that all Defendants "participated in and/or failed to intervene in drafting various reports and declarations about the events of November 14, 2020." *Id.* ¶ 36. She alleges that Defendants improperly drafted their police reports by describing Dillon as the driver of Robinson's car, stating that Dillon was present at the scene and in the white Mercedes when the officers arrived, and mischaracterized witnesses' statements to indicate that Dillon was the driver even though the witnesses had not mentioned Dillon. *Id.* ¶¶ 37–40.

On April 6, 2021, the Alameda County District Attorney's Office charged Dillon with: (1) unlawfully carrying a loaded firearm in a city (Pen. Code § 25850, subd. (a)), to wit, a .40 Glock 22, with a special allegation that the Glock was not registered in her name; (2) unlawfully carrying a concealed firearm within a vehicle (Pen. Code § 25400, subd. (a)(1)), to wit, a .40 Glock 22, with a special allegation that the Glock was loaded and not registered in her name; (3) unlawfully carrying a loaded firearm in a city (Pen. Code § 25850, subd. (a)), to wit, a semi-automatic assault rifle, with a special allegation that the assault rifle was not registered in her name; (4) unlawfully carrying a concealed firearm within a vehicle (Pen. Code § 25400, subd. (a)(1)), to wit, a semi-automatic assault rifle, with a special allegation that the assault rifle was loaded and not registered

in her name; (5) unlawfully possessing an assault weapon (Pen. Code § 30605, subd. (a)); (6) unlawfully carrying a loaded firearm in a vehicle in a city (Pen. Code § 25850, subd. (a)), to wit, a 9mm FMK pistol; (7) unlawfully carrying a concealed firearm (Pen. Code § 25400, subd. (a)(2)), to wit, a 9mm FMK pistol; and (8) unlawfully possessing marijuana for sale (Health & Saf. Code § 11359, subd. (b)). *Id.* ¶ 41. After discovery in the criminal case began, the prosecution became aware that Dillon was not involved in the crimes charged. *Id.* ¶ 43. The prosecution then moved to dismiss the assault weapon charges and reduce the remaining charges to misdemeanors.[3] *Id.* ¶ 43. On August 5, 2022, the court granted the prosecution's motion and recommended judicial diversion for the remaining charges, which were dismissed upon Dillon's completion of the diversion program six months later. *Id.* ¶ 44.

## II.     JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

---

[3] Dillon does not specify in her FAC which charges remained after the voluntary dismissal. ECF No. 20.

*Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072. In so doing, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted).

## IV.   DISCUSSION

Defendants move to dismiss the two causes of action in the FAC: (1) fabrication of evidence and (2) malicious prosecution, both pursuant to 42 U.S.C. § 1983.

### A.   Fabrication of Evidence

A defendant is liable for fabrication of evidence if "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

Defendants contend that drafting choices made by officers should not be considered a deliberate fabrication of evidence. ECF No. 23 at 6. "To be sure, not all inaccuracies in an investigative report give rise to a constitutional claim." Spencer, 857 F.3d at 798. Here, however, Dillon sufficiently alleges that Defendants mischaracterized material witness statements and facts in their reports. *See id.*, 857 F.3d at 798 (finding that there is direct evidence of deliberate fabrication when "an interviewer deliberately mischaracterizes witness statements in her investigative report"). For example, Dillon alleges that in an interview with Defendant Vukasinovic, a witness named George Nesbitt described Robinson as being associated with the white Mercedes but did not mention Dillon at all. ECF No. 20 ¶ 37(e) n.6. Further, other witnesses who called 911 described the suspect as "a black male wearing a white sweatshirt and driving for standing in front of a white or silver Mercedes." *Id.* But despite those witnesses all describing Robinson as the suspect, the Defendants mischaracterized these statements by

suggesting that Dillon was the driver of the white Mercedes. *Id.* at 29.

Defendants further argue that the FAC is conclusory as to each officer's conduct. ECF No. 23 at 6–7. The Court disagrees. Dillon alleges that all Defendants participated in drafting and reviewing the reports and declarations made by the officers. ECF No. 20 ¶ 36. Dillon also makes specific allegations to each officer's individual conduct. *Id.* ¶¶ 27–40. She alleges: (1) Nguyen, Caballero, Hiller, Perez-Angeles, and Fowler were the first officers at the scene and saw Robinson flee, *id.* ¶¶ 27, 31; (2) those officers interrogated Dillon as she explained she did not have the key to the white Mercedes, *id.*; (3) Nguyen, Caballero, Hiller, Perez-Angeles, and Leichliter searched the vehicle and her bag, *id.*; (4) Leichliter, Rodriguez, and Rossi placed Dillon under arrest, *id.*; (5) Rowbotham reviewed surveillance images that showed Robinson standing near the white Mercedes until the officers arrived and Robinson fled, *id.* ¶ 37(f); and (6) Vukasinovic knew there was at least one eyewitness who described Robinson as the driver of the white Mercedes—and made no mention of Dillon—in their interview with him, *id.* ¶¶ 37(e) n.1, 39. Accordingly, the Court finds that Dillon sufficiently alleged the Defendants' involvement to state a claim for relief against them.

Defendants' final argument is that the FAC fails to allege facts showing that the officers' omissions or mischaracterizations—as opposed to the guns or marijuana found in the car—were the cause of Dillon's arrest. ECF No. 23 at 7. But Dillon sufficiently alleges that Defendants "caused" her prosecution by "present[ing] the district attorney with information known [] to be false" and/or "knowingly withhold[ing] relevant information" from the prosecutor. *See Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018). Here, Dillon alleges that Defendants knew Dillon could not have been the driver of the white Mercedes or the possessor of the contraband therein because (1) Dillon arrived in her own vehicle *after* the officers saw Robinson flee, (2) Dillon did not have a key to the white Mercedes, (3) Dillon reported to 911 dispatchers that she was going to pick up her daughter, (4) no witnesses mentioned Dillon as the suspect, and (5) surveillance footage reviewed by Rowbotham did not reveal Dillon near the white Mercedes until after the officers arrived and Robinson fled. *Id.* ¶¶ 31–39. The Court therefore finds that Dillon has plausibly alleged that the mischaracterizations in the report wrongfully

1  caused her prosecution.

### B.     Malicious Prosecution

To establish liability for a claim of malicious prosecution, a plaintiff must prove "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice."[4] *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989)). Additionally, a plaintiff must show Defendants prosecuted for the purpose of denying a specific constitutional right.[5] *Id*.

#### 1.     Favorable Termination

The heart of the parties' dispute is whether the prior action was terminated in the plaintiff's favor. Defendants argue that a plaintiff cannot maintain a malicious prosecution claim where "'the charges were withdrawn on the basis of a compromise among the parties.'" ECF No. 23 at 8, 29 (quoting *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (2004)). But the Supreme Court has recently held that to succeed on a malicious prosecution claim, a plaintiff "need only show that the criminal prosecution ended without a conviction" and not "that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

Dillon's charges were either voluntarily dismissed or resolved through diversion court, neither of which constitutes a conviction. *See* ECF No. 20 ¶ 44. The *Thompson* Court found that a voluntary dismissal without an explanation from the judge or prosecutor satisfies the favorable termination element. 596 U.S. at 49. Similarly here, the felony assault weapon charges were dismissed while the remaining charges were reduced to misdemeanors and then ultimately resolved through a diversion program. ECF No. 20 ¶ 43; *see* Cal. Penal Code § 1001.95(c) (providing that under a court initiated misdemeanor diversion program, "[i]f the defendant has complied with the imposed terms and conditions, at the end of the period of diversion, the judge shall dismiss the action against the defendant"). "The favorable termination requirement serves

---

[4] Defendants have not disputed that the element of malice is plausibly alleged, so the Court analyzes only the first two elements.
[5] Defendants have not disputed that this element is plausibly alleged, so the Court does not analyze it.

1    multiple purposes: (i) it avoids parallel litigation in civil and criminal proceedings over the issues
2    of probable cause and guilt; (ii) it precludes inconsistent civil and criminal judgments where a
3    claimant could succeed in the tort action after having been convicted in the criminal case; and (iii)
4    it prevents civil suits from being improperly used as collateral attacks on criminal proceedings."
5    *Thompson*, 596 U.S. at 44. Characterizing diversion as a favorable termination is not at variance
6    with any of these purposes, and is consistent with its holding that "[a] plaintiff need only show
7    that the criminal prosecution ended without a conviction," *id.* at 49. Accordingly, absent
8    compelling authority finding otherwise, the Court will not inclined to dismiss Dillon's malicious
9    prosecution claim based on the element of favorable termination.

### 2. Probable Cause

In their reply, Defendants also argue that Dillon failed to allege facts showing that Defendants lacked probable cause to initiate proceedings against her. ECF No. 29 at 5. As a threshold matter, Defendants waived this argument by not properly raising it in their initial motion. *See United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (recognizing the general principle that arguments raised for the first time in a reply brief are waived). Nevertheless, the Court finds that Defendants' argument fails considered on its merits.

In a malicious prosecution case, "[p]robable cause for the initiation of a criminal prosecution exists where 'it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011) (quoting *Conrad v. United States,* 447 F.3d 760, 768 (9th Cir. 2006)). Whether probable cause existed for a criminal prosecution is a question of law; however, if there is a dispute to the facts known to the defendant in bringing the prior action, "they must be passed upon by the jury before the court can determine the issue of probable cause." *Sheldon,* 47 Cal. 3d at 877. Defendants do not dispute the facts, leaving the question of probable cause for the Court.

Drawing inferences in favor of Dillon, the Court finds that she sufficiently establishes that the Defendants lacked probable cause to initiate a case against her. As previously discussed, Defendants were the first officers at the scene, witnessed Robinson flee from the white Mercedes, saw that Dillon did not have the keys to the vehicle, and knew from dispatchers that Dillon had

7

1  called the police to inform them about the situation at her mother's home.  ECF No. 20 ¶¶ 19–33.
2  Dillon has thus alleged that Defendants knew Dillon was not the driver of the white Mercedes or
3  the possessor of the contraband therein and lacked probable cause to initiate the criminal
4  prosecution against her.  Accordingly, Defendants' motion to dismiss fails on this ground.

## CONCLUSION

For the reasons above, the Court denies the Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated:  March 3, 2025

_____
JON S. TIGAR
United States District Judge